STATE of South Dakota, Plaintiff and Respondent,

v.

Darrell Duane FARLEY and David Lee Wisecup, Defendants and Appellants.

No. 12638.

Supreme Court of South Dakota.

Argued Jan. 29, 1980.

Decided March 26, 1980.

---

Leann Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

R. D. Hurd, Sioux Falls, for defendant and appellant Farley.

Lee M. McCahren, Vermillion, for defendant and appellant Wisecup.

DUNN, Justice.

Defendants appeal from their conviction of first degree robbery. We affirm.

Theodore Kanvik, the victim, was hitchhiking from Colorado to Chicago, Illinois, on February 18, 1978. He was picked up by defendant Farley, who was driving a 1975 black van. They arrived in Sioux City, Iowa, between 9 and 10 p. m. and proceeded to the house of Farley's brother. Farley, Kanvik, and several other people began smoking marijuana and drinking beer. Kanvik admits possessing marijuana and hashish during the trip and the remainder of the evening, but he denied Farley's allegations that Kanvik also possessed heroin and that they discussed trading Farley's van for one ounce of Kanvik's heroin.

According to Farley's testimony, the trade had been agreed upon when it was discovered that the heroin was four grams short of one ounce. Farley testified that an argument ensued and continued throughout the evening. Several individuals proceeded to a couple of local taverns and stayed at Toby's Tap in Sioux City until 2 a. m. Farley testified that after the tavern closed, he, Kanvik and another individual left and proceeded in the van toward the home of another friend in Sioux City. Farley testified that the argument over the drug deal had been continuing and that he struck Kanvik and threw him out of the van; he denied that any money was taken from Kanvik or that defendant Wisecup was in the van at the time. Wisecup likewise testified that he was at a friend's home when the alleged robbery took place, but he admitted having been introduced to Kanvik at Toby's Tap during the evening.

Kanvik testified that he left Toby's Tap in order to sleep in the van. According to Kanvik, he was awakened by Farley hitting him in the face and demanding that he give Farley his money. He gave the money to Farley, heard Wisecup say "open the rear doors," and was dragged out of the van onto the ground. Farley and Wisecup then drove away in the van.

Kavik informed the police of the incident, and the van was subsequently stopped by the police. Farley and Wisecup were in the

van when it was stopped. Wisecup explained his presence in the van by stating that Farley had picked him up at the home of the person he had gone to visit after leaving Toby's Tap.

■ Defendants' initial contention on appeal is that the trial court erred in refusing a proposed jury instruction to the effect that simple assault as defined by SDCL 22–18–1(2) was a lesser included offense of robbery; however, defendant Wisecup did not join with Farley in proposing the jury instructions, and he may not pursue this point on appeal.

Defendant Farley's proposed instruction dealt exclusively with that part of South Dakota's assault statute concerned with "recklessly" causing bodily injury to another. He may not now urge the consideration of any other theory of assault.

The essence of SDCL 22–18–1(2) is that a reckless action may result in an assault. In defining "reckless," SDCL 22–1–2(1)(d) states:

The words "reckless, recklessly" and all derivatives thereof, import a conscious and unjustifiable disregard of a substantial risk that the offender's conduct may cause a certain result or may be of a certain nature. A person is reckless with respect to circumstances when he consciously and unjustifiably disregards a substantial risk that such circumstances may exist.

Farley admitted at trial that he "beat the hell out of [Kanvik] and threw him out of the van." There is absolutely no dispute that the blows were intentional. Moreover, robbery is defined by SDCL 22–30–1 through 22–30–4 as an intentional crime. It is clear therefore that even if Farley's strained theory of a reckless assault is accepted there is no such thing as a robbery caused by reckless force. Reckless conduct is irrelevant to a robbery charge, and the court was justified in denying the instruction.

■ Defendants next contend that the court improperly submitted a question of jurisdiction to the jury. The trial court

properly instructed the jury that the state has the burden to prove beyond a reasonable doubt that the crime took place at the time and place alleged in the information. The question submitted to the jury was a question of venue, not a question of jurisdiction. The venue question is one for the jury, and the state has the same high burden of proof. *State v. Greene*, 86 S.D. 177, 192 N.W.2d 712 (1971). No motions, written or oral, were presented to the court concerning jurisdiction. The trial court did not commit error on this point.

■ Defendants' final contention is that the trial court erred in not granting their two motions for mistrial. Defendant Wisecup's counsel asked the following question of an Iowa State Trooper who was involved in the case:

Q: Did you tell Mr. Wisecup that you'd release him if there wasn't a warrant out for him?

The trooper responded:

A: I said I'd check with the people who entered the van and if they had nothing on him he would not be charged with a stolen van.

Wisecup's counsel moved for mistrial and Farley's counsel later joined in the motion. The court denied the motion on the basis that the answer was in direct response to the question from Wisecup's counsel. It is true that this question could have been answered yes or no. It is also true that the state had agreed to caution all of its witnesses before trial not to offer any testimony concerning the possibility that the van was stolen. At the same time, the answer was directly responsive to counsel's question in regard to the existence of a warrant concerning these individuals. Farley claims that he should not be bound by what Wisecup's counsel may have done; however, he cannot complain that a prosecution question brought about this statement from the officer.

■ The second motion for mistrial occurred following the response of the police chief of North Sioux City, South Dakota, to a question asked by Wisecup's counsel. The question and answer are set out as follows:

Q: The reason you got the pictures of these two individuals to show to Mr. Kanvik was because these were the two individuals that were in the van when it was stopped at Sioux City?

A: Right. I was notified by Sioux City that the van, these individuals had been picked up in the van. Prior to that there was a teletype from Phoenix alerting the Sioux City area that this van was, or was stolen from Phoenix, was en route to Sioux City.

The trial court also denied this motion for mistrial—even though the answer was clearly unresponsive—because there had been testimony relating to the possibility that the van may have been stolen in prior questioning. The court thereupon admonished the jury to disregard all consideration of whether the van may have been stolen and denied the mistrial.

In addition to the questions and answers that prompted the motions for mistrial, it should be noted that the first witness at trial—an officer of the North Sioux City Police Department—testified that on the evening in question he had responded to a separate call concerning the possibility of the van being stolen. No objection was made by counsel at that time, and this occurred prior to both of the motions for mistrial. In addition, defendant Farley himself admitted that he had tried to sell Kanvik a van that he did not own.

■ Finally, in view of a defense that was replete with admissions of heroin deals, use of hashish, being "hooked on drugs," drug busts, felony convictions and bizarre sexual activity, it seems doubtful that the casual mention that the van may have been stolen could have influenced this jury. The trial judge has wide discretion in determining the prejudicial effect of a witness' statements, and it is only when this discretion is clearly abused that this court will overturn a decision. *State v. Winckler*, 260 N.W.2d 356 (S.D.1977). We find no abuse of discretion under the facts of this case.

The judgments of conviction are affirmed.

All the Justices concur.