STATE of South Dakota, Plaintiff
and Appellee,

v.

Lavern C. FAST HORSE, Defendant
and Appellant.

No. 17664.

Supreme Court of South Dakota.

Considered on Briefs May 29, 1992.

Decided Aug. 5, 1992.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Michael S. Stonefield, Rapid City, for defendant and appellant.

SABERS, Justice.

Lavern C. Fast Horse (Fast Horse) appeals his conviction for embezzlement of property received in trust. We affirm.

## FACTS

Jeff Dale (Dale) operated a business in Rapid City, South Dakota that sold satellite systems, televisions, VCRs and camcorders. Fast Horse visited Dale's business in December 1990 seeking employment. Dale had no salaried positions available but told Fast Horse that if he could bring in a customer or sell an item he would give him a small commission. After that time, Fast Horse would periodically stop in Dale's business to talk to Dale or to obtain literature on Dale's merchandise. During one of these visits, Fast Horse noticed a camcorder Dale had displayed for sale. Fast Horse told Dale he knew a local Indian Tribe he once worked for was looking for a video camera and asked if he could take the camcorder to show the tribe. Since Dale had previous information that the tribe was looking for a camcorder, he agreed to let Fast Horse take the one on display to show to the tribe.

Fast Horse returned to Dale's store several days after taking the camcorder but did not bring the item back with him. He told Dale the tribe did not want the camcorder but one of the tribal officials was trying it out to see if he wanted to purchase it for his personal use. A few days later, Fast Horse again stopped in Dale's business without returning the camcorder. When Dale asked Fast Horse about the item he said it was still on the reservation. Fast Horse also said he was going to be leaving soon on a trip to California. After Fast Horse left, Dale contacted two tribal officials to inquire about the whereabouts of the camcorder. One of them confirmed Fast Horse had shown the tribe the item but said Fast Horse took it back when the tribe failed to purchase it. When Dale attempted to reach Fast Horse, he found he had already left for California. In fact, Fast Horse took the camcorder with him to California where, according to his own testimony, it was seized by law enforcement authorities from his hotel room.

State ultimately filed an information charging Fast Horse with one count of theft by deception and an alternative count of embezzlement of property received in trust. The matter was tried before a jury in July 1991 and the jury returned a verdict finding Fast Horse guilty of embezzlement of property received in trust. A judgment was entered accordingly and Fast Horse appeals.

## ISSUE ONE

WHETHER THE TRIAL COURT ERRED IN DENYING FAST HORSE'S PROPOSED JURY INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE?

The trial court gave the following jury instruction on circumstantial evidence:

Direct evidence means evidence that directly proves a fact. Circumstantial evidence means evidence that proves a fact from which a conclusion can be drawn that another fact exists.

It is not necessary that facts be proved by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct and circumstantial evidence. The law makes no distinction between direct and circumstantial evidence as a means of proof. Neither is entitled to any greater weight than the other.

During settlement of the jury instructions, Fast Horse proposed the following circumstantial evidence instruction which was rejected by the trial court:

Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true establishes that fact.

Circumstantial evidence means evidence that proves a fact from which an infer-

ence of the existence of another fact may be shown.

It is not necessary that facts be proven by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct and circumstantial evidence. The law makes no distinction between direct evidence and circumstantial evidence as a means of proof. Neither is entitled to any greater weight than the other.

Where the case of the state rests substantially or entirely on circumstantial evidence, you are not permitted to find the defendant guilty of the crime charged against him unless the proved circumstances are not only consistent with the guilt of the defendant, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

If all the facts and circumstances shown can be reasonably accounted for upon any theory consistent with the innocence of the defendant, the jury must acquit the defendant.

As Fast Horse submits, the trial court's jury instruction lacks the language contained in his proposed instruction concerning prosecutions based substantially on circumstantial evidence. Citing *State v. Breed*, 399 N.W.2d 311 (S.D.1987), where we stressed the importance of such language, Fast Horse argues the trial court's rejection of his proposed instruction constitutes reversible error. We disagree.

Breed was convicted of several counts of burglary, theft and receiving stolen property. On appeal, we found the evidence against him "totally circumstantial," particularly as to identification. *Breed*, 399 N.W.2d at 312. As to the sufficiency of the jury instructions on circumstantial evidence, nearly identical to the one in this case, we held:

The trial court did not instruct the jury that where the case of the state rests *substantially or entirely* on circumstantial evidence, they are not permitted to convict the accused unless (1) the proved circumstances are not only consistent with the guilt of the accused, but cannot be reconciled with any other rational conclusion and (2) each fact which is essential to complete a set of circumstances necessary to establish the accused's guilt has been proved beyond a reasonable doubt.

The trial court's failure to so instruct the jury in our opinion clearly and substantially prejudiced appellant. Even though this issue was not raised on appeal, we conclude that this plain error requires a retrial.

*Breed*, 399 N.W.2d at 312–13 (emphasis added) (citations omitted).

■ In contrast with *Breed*, where state's case was totally circumstantial, the only element of embezzlement in any real dispute in the present case was whether Fast Horse acted with an intent to defraud. Generally, a circumstantial evidence instruction is not required where intent is the only element not proven by direct evidence. *See, Spears v. State*, 272 Ind. 634, 401 N.E.2d 331 (1980), *modified on other grounds*, 272 Ind. 647, 403 N.E.2d 828 (1980); *State v. Kaufman*, 265 N.W.2d 610 (Iowa 1978), *State v. Moehlis*, 250 N.W.2d 42 (Iowa 1977) *; *Lindsey v. State*, 671 P.2d 57 (Okla.Crim.App.1983); *State v. Brooks*, 631 P.2d 878 (Utah 1981).

In *Spears, supra*, the defendant was convicted of assault with intent to kill and second degree murder. During trial, the trial court failed to give a proper circumstantial evidence instruction. On appeal, the Indiana Supreme Court found reversible error in the failure to give the instruction as to the murder charge because that charge was proved *only* with circumstantial evidence. However, as to the assault

---

* In *State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979), the Iowa Supreme Court disposed of the requirement of a cautionary circumstantial evidence instruction based upon the rule of equality between direct and circumstantial evidence and based upon an extensive list of federal and state courts which have eliminated the distinction between direct and circumstantial evidence in testing evidential sufficiency.

with intent to kill charge, the Indiana Court observed:

> Defendant claims that any evidence of intent to kill was circumstantial and, therefore, the instruction [on circumstantial evidence] would apply equally to that charge. The evidence from which intent could be inferred was direct. Thus, the instruction would not apply to the assault with intent to kill charge. To hold otherwise would require a circumstantial evidence instruction in every case involving a crime containing the element of intent. Unnecessary confusion would result from such a course.

*Spears*, 401 N.E.2d at 335. Or as quoted by the Oklahoma Court of Criminal Appeals in *Lindsey, supra:*

> Intent, in practically all cases, must be shown by the inference arising from the facts shown. We do not think that, from a practical standpoint, it is correct to say that it is "a conviction on circumstantial evidence," where all salient facts of the case (including the facts on which the inference itself rests) are directly proved, and only the intent with which proved acts were committed is a matter of inference. If so, it would be proper to speak of a conviction for homicide as being "a conviction on circumstantial evidence," where eyewitnesses see the killing, but the jury must infer the malice or heat of passion, as the case may be, from circumstances surrounding the transaction.

*Lindsey*, 671 P.2d at 59 (*quoting Love v. State*, 9 Ga.App. 874, 72 S.E. 433 (1911)).

These authorities are consistent with the general view that:

> The failure or refusal to give an instruction on circumstantial evidence is not error where there is direct evidence that the defendant committed the act charged. So also, it would not be error to fail or refuse to instruct upon circumstantial evidence where ... the state relied on direct evidence to prove the acts of crime and the identity of the perpetrator *and only relied on circumstantial evidence to prove intent.*

75B Am.Jur.2d *Trial* § 1391 (1992) (emphasis added). *See also,* Annotation, *Modern Status of Rule Regarding Necessity of Instruction on Circumstantial Evidence in Criminal Trial—State Cases*, 36 A.L.R.4th 1046, § 6 (1985) (where element proved by circumstantial evidence is defendant's intent or state of mind, court's have held no special instruction is required as, by their nature, intent and state of mind must usually be inferred from the circumstances).

■ Here, since the only element proved by circumstantial evidence was Fast Horse's intent, we find no error in the trial court's refusal of Fast Horse's proposed circumstantial evidence jury instruction.

### ISSUE TWO

WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON FLIGHT?

■ The trial court gave the following jury instruction over Fast Horse's objection:

> Flight by the defendant, *after the crime has been committed,* does not create a presumption of guilt. You may consider evidence of flight, however, as tending to prove the defendant's consciousness of guilt. You are not required to do so. You should consider and [weigh] evidence of flight by the defendant in connection with all the other evidence in the case and give it such weight as in your judgment is fairly entitled to receive. (emphasis added).

Fast Horse argues the trial court erred in giving the emphasized portion of this instruction because it removed an issue from the jury by requiring it to find that a crime was, in fact, committed. He asserts it would have been preferable for the instruction to make reference to flight after commission of an *alleged* crime rather than commission of *the* crime. While we agree such phraseology would be more technically accurate, we find no prejudicial error in the giving of the instruction.

■ "[J]ury instructions are adequate when, *considered as a whole,* they give the full and correct statement of the law applicable to the case." *State v. Grey Owl*, 295

N.W.2d 748, 751 (S.D.1980) (emphasis added). *Accord, State v. St. Cloud,* 465 N.W.2d 177 (S.D.1991). Thus,

> [w]hen error is alleged in a portion of a jury charge, we review the challenged passage not in "artificial isolation" but in the context of the instructions as a whole. It is not grounds for reversal that the charge might have been differently, or even better, worded; a [trial] court has wide discretion on choice of language, and we will not find that discretion abused when the instructions as a whole accurately and adequately state the relevant law.

*United States v. Kabat,* 797 F.2d 580, 588 (8th Cir.1986) (citations omitted). *See also U.S. v. McMillan,* 820 F.2d 251 (8th Cir. 1987) (challenged jury instruction not reviewed in isolation but in context of charge as a whole and in context of whole trial). Or, as more succinctly put by the Fourth Circuit Court of Appeals, "[r]eviewing courts must resist the temptation to read jury instructions myopically." *Briley v. Bass,* 750 F.2d 1238, 1243 (4th Cir.1984).

Principles similar to those outlined above were applied by the Supreme Court of Iowa in *State v. Upton,* 167 N.W.2d 625 (Iowa 1969). Upton was charged with receiving stolen property. The jury was instructed that to convict him it had to find, " 'beyond a reasonable doubt, that the defendant had knowledge it [the property] was stolen *when he aided in its concealment.*' " *Upton,* 167 N.W.2d at 630 (emphasis original). On appeal, Upton, similar to Fast Horse, argued the instruction removed an issue from the jury because it told the jury he did aid in concealing the property and the jury only had to find beyond a reasonable doubt he knew it was stolen when he did so. The Iowa court held:

> We do not believe the instruction is fairly open to that objection. The instructions, of course, must be considered in their entirety. In at least three places throughout the instructions the jury was told the duty of the State to prove all elements necessary to a finding of guilt beyond a reasonable doubt.
> When this instruction is read as a whole and is related to the other instructions,

we find no possibility the jury could have been misled. Defendant is being hypercritical, and we find no merit in his objection.

*Upton,* 167 N.W.2d at 630 (citation omitted).

Here, in various instructions, the jury was told: it must decide all questions of fact; Fast Horse's not guilty plea placed every material fact constituting the offenses charged in issue; Fast Horse was presumed innocent unless it was satisfied of his guilt beyond a reasonable doubt; state had the burden of proving every element of the offenses charged beyond a reasonable doubt; and, it must determine if Fast Horse committed acts constituting one of the offenses charged and, if so, which offense. As in *Upton,* when these instructions are read as a whole, we find no possibility the jury was misled into the mistaken belief it had no discretion concerning the determination of whether a crime was committed.

■ In order to be entitled to reversal of a conviction due to error in instructing the jury, an appellant must not only show error, but prejudicial error in the instruction. *See, State v. Eagle Hawk,* 411 N.W.2d 120 (S.D.1987). This requires a showing that the alleged error, in all probability, produced some effect upon the jury's verdict and was harmful to the substantial rights of the party assigning it. *State v. Michalek,* 407 N.W.2d 815 (S.D.1987). The inquiry in this regard is whether, absent the alleged error, it is clear beyond a reasonable doubt the jury would have returned a guilty verdict. *Id.* Here, Fast Horse renders a myopic, hypercritical reading to the challenged jury instruction which we reject. The instructions, viewed as a whole, adequately presented the law and Fast Horse has failed to demonstrate any probability the flight instruction's use of the terminology "the crime" rather than "the *alleged* crime" had any effect on the jury's verdict. Thus, we find no prejudicial error in the giving of the instruction under the facts of this case.

Fast Horse also contends the flight instruction was improperly given because the facts do not reflect a "classic flight situation." In support of this contention he points out his trip to California did not really follow the alleged offense but was proven as a part of the commission of the offense.

In *State v. Hoover*, 89 S.D. 608, 236 N.W.2d 635 (1975), the defendant, suspected of participating in a burglary in Rapid City, South Dakota, was arrested in Missouri several weeks after the crime. A flight instruction was given during the defendant's trial. In addressing a challenge to the instruction on appeal, this court observed, "we might well be in accord with the Colorado Supreme Court in *Robbins v. People*, 1960, 142 Colo. 254, 350 P.2d 818, where it held that a flight instruction 'is rarely advisable and should never be given unless the peculiar facts of the case appear to make it essential' ..." *Hoover*, 89 S.D. at 618, 236 N.W.2d at 640–41. Despite this dim view of jury instructions on flight, we have also recognized that:

> [o]rdinarily, evidence of flight and deception, standing alone, is insufficient to convict, but when accompanied by other evidence, it may justify an inference of guilt. An attempt by the accused to flee *following commission of the alleged crime* is circumstantially relevant to prove not only commission of the act, but also the intent and purpose with which it was committed.

*Marshall v. State*, 305 N.W.2d 838, 840–41 (S.D.1981) (emphasis added) (citations omitted). Thus, we have found evidence of flight to be relevant if it meets the temporal restriction that the attempt to flee follow the commission of an alleged crime.

Issues concerning the temporal relevancy of flight evidence and the propriety of jury instructions on flight were revisited in *State v. Waller*, 338 N.W.2d 288 (S.D.1983). In *Waller*, the defendant challenged the giving of a flight instruction because he did not immediately flee the scene of a crime but, rather, left the state several months after the alleged offense. We held:

The Court of Appeals for the Eighth Circuit has stated that "the inference of guilt that may be drawn by the fact of flight only arises 'immediately after the commission of a crime, or *after* [a defendant] *is accused of a crime that has been committed.*' " *United States v. White*, 488 F.2d 660, 662 (8th Cir.1973) (emphasis in original). The requirement of immediacy of flight is greatly diminished, however, when the defendant knows that he is accused of or sought for the crime charged.

*Waller*, 338 N.W.2d at 292.

Based upon the above authorities, this court has recognized the evidence will support giving a jury instruction on flight only where it shows the defendant's attempt to flee followed immediately after the commission of a crime or that it followed his obtaining knowledge he had been accused or was being sought for a crime. Thus, in *State v. Menard*, 424 N.W.2d 382 (S.D. 1988), we found no reversible error in giving a flight instruction where the defendant fled the scene of a stabbing/murder immediately after the stabbing but before the police arrived on the scene. Nevertheless, we cautioned that flight instructions, "as well as others which appear to be a commentary on the evidence, should be used sparingly and only when the special circumstances and evidence require." *Menard*, 424 N.W.2d at 384.

■ Application of these principles is made difficult in this case by the fact Fast Horse's trip to California does not fit conveniently within any of the temporal restrictions recognized in *Marshall, supra* or *Waller, supra*. In contrast with those cases, the crime in the instant case did not so much occur on a date certain as it constituted an ongoing enterprise from the time Fast Horse obtained the camcorder until his apprehension with the device in California. Thus, it cannot be said that Fast Horse's trip to California followed *immediately* after the commission of a crime or after his obtaining knowledge he was being sought for a crime.

Fast Horse's situation is more analogous to that of the defendant in *Kamees v.*

*State,* 815 P.2d 1204 (Okla.Crim.App.1991). In *Kamees,* the defendant committed a "grab-and-run theft" from a store by taking a VCR off the shelf at closing time and running out of the store. *Id.* at 1206. During the defendant's trial for grand larceny, the trial court gave an instruction on flight. In addressing the defendant's challenge to the instruction on appeal, the Oklahoma Court stated:

> We agree with the appellant that giving the instruction on flight is error. The appellant's act of running away with the VCR completed the element of "carrying away" required for grand larceny. Flight, by definition, is a running away after commission of a crime. Certainly flight could occur after a person committed grand larceny. However, the facts do not support such a finding here.

*Id.*

Here, an essential element of the embezzlement offense was that it be shown Fast Horse appropriated the camcorder to a use or purpose not in the due and lawful execution of his trust. SDCL 22–30A–10. Given the fact Fast Horse was entrusted with the camcorder in order to show it to a local Indian tribe, his act of taking it to California does not really represent flight after commission of a crime but, similar to the defendant's running away in *Kamees,* a completion of the element of misappropriation required for embezzlement. Certainly a flight could occur after a person committed embezzlement, but it would not appear the facts support such a finding here.

■ Irrespective of the fact a flight instruction was unwarranted in this case, as in *Hoover, supra,* we find no prejudicial error in the giving of the instruction. In *Kamees, supra,* the Oklahoma Appellate Court found that although the flight instruction was erroneously given, the error was harmless. This was based in part on its finding that the instruction was superfluous because:

> [t]o find the appellant guilty of grand larceny the jury had to find he carried away merchandise. Under the facts of this case the carrying away was completed when the appellant ran away with the

VCR. Consideration of the same evidence in the context of flight could not change in any way the jury's fundamental determination of guilt. Therefore the erroneous instruction does not require reversal of this case.

*Kamees,* 815 P.2d at 1207.

Much the same is true here. To find Fast Horse guilty of embezzlement the jury had to find he appropriated the camcorder to a use or purpose not in the due and lawful execution of his trust. Under the facts of this case, his misappropriation was complete when he traveled to California with the camcorder in hand. Consideration of this same evidence in the context of flight could not change in any way the jury's fundamental determination of guilt. Moreover, as in *Waller, supra,* Fast Horse had the opportunity to, and did attempt to explain his trip to California and the jury was instructed it was not required to consider this evidence as consciousness of guilt. Nevertheless, it is doubtless Fast Horse's convoluted, twisted and inconsistent explanations as to why he took the camcorder to California did far more to assure his conviction than any erroneous jury instruction on flight.

Based upon the above analysis, we are convinced beyond any reasonable doubt that even absent the erroneous flight instruction the jury would have returned a guilty verdict. Accordingly, we find no prejudicial error in the trial court's giving of the instruction and that it provides no foundation for a reversal of Fast Horse's conviction.

Affirmed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Regarding the proposed circumstantial evidence jury instruction by Fast Horse, I concur outright with the majority opinion.

Concerning the instruction to the jury on flight, I specially concur. South Dakota's

jury instruction on flight is sick and it needs a doctor.

Here, Fast Horse told the victim of the crime that he was leaving for California. Is this "flight?" * Is this "fleeing from justice?" Secondly, State's Information did not fix a date certain for Fast Horse's commission of the offense, but rather, charged the commission "during the month of December, 1990, through January, 1991." In essence, State took the position that this was a continuing crime.

Is it not the jury's function to determine if, indeed, a crime has been committed? Obviously. Why, then, in this state, do we continue to bless an instruction, such as the one given here, that "Flight by the defendant, *after the crime has been committed,* does not create a presumption of guilt." (Emphasis supplied mine). In effect, the assumption is made that (a) a crime has been committed (2) the defendant committed the crime and (3) defendant fled from the crime. Then, in effect, it tells the jury you do not have to consider those three assumptions. It is instructional baloney. Frankly, in my opinion, this South Dakota Criminal Pattern Instruction 1–14–9 is inherently skewed against every defendant where the instruction is given. In *State v. Menard,* 424 N.W.2d 382 (S.D.1988) we admonished the trial courts in this state to use this instruction on flight "sparingly" and "only when the special circumstances and evidence require." We went on in *Menard* to express, "To that extent we would suggest modifying the comment which accompanies Pattern Jury Instruction (Criminal) 1–14–9." Could not the trial courts say, as a modifier, "after the *alleged* commission of the offense?" This would be a beginning. However, we need a complete overhaul.

An instruction, used in this case, was error. However, our review does not end there. SDCL 23A–44–14 reflects: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In each case, to determine if it is prejudicial error, the facts and circumstances of the case govern. *State v. Branch,* 298 N.W.2d 173 (S.D.1980). When instructing a jury, to warrant a reversal, based upon an error, it is vital to establish, if the conviction is to be reversed, that prejudicial error be established. Stare decisis on erroneous instructions is set forth in *State v. Willis,* 370 N.W.2d 193 (S.D.1985). Furthermore, in said case, we held that an appellant must establish that, under the evidence, the jury might and probably would have returned a different verdict but for the error in the instructions.

Here, Fast Horse bought a one way airplane ticket to California. He took the camcorder with him. He also offered to sell the camcorder to one Joann Thunderhawk. Fast Horse also told Dale, the victim, that the camcorder was still on the reservation. But he brought the camcorder to his girlfriend's apartment in Rapid City, before going to California. His story of where he had it, what he did with it, what he intended to do with it, is rife with prevarication. My point is: There is overwhelming evidence of his embezzlement. And there is error, but no prejudicial error by decisional law in South Dakota, in giving what I believe to be a lousy instruction (per se) in law. Notwithstanding this instruction, the jury might and probably would not have returned a different verdict. *See also, State v. Stapelton,* 387 N.W.2d 28 (S.D.1986). A fundamental determination of embezzlement by the jury was sound. *Kamees,* 815 P.2d at 1207.

Our committee on Pattern Jury Instructions in this state needs to review and improve a "flight" instruction for our Bench and Bar.

* Evidence of flight can be attributed to causes other than consciousness of guilt. *Wong Sun v. United States,* 371 U.S. 471, 483, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, 452–53, n. 10 (1963).